## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

        Plaintiff,

vs.                                                                      No. 05-CR-01858 MV

DAVID GARCIA,

        Defendant.

## <u>MEMORANDUM OPINION AND ORDER</u>

**THIS MATTER** is before the Court on David Garcia's Petition for a Writ of *Coram Nobis*. Doc. 130.  The government responded [Doc. 133] and Mr. Garcia replied [Doc. 136].  Having carefully considered the briefing, relevant law, and being otherwise fully informed, the Court finds that Mr. Garcia's Petition is not well-taken and will be **DENIED**.

## BACKGROUND

On April 20, 2005, Mr. Garcia pled guilty to the following fourth-degree felonies under New Mexico law: (1) Receiving Stolen Property (Receive) (Over $250), (2) Receiving/Transferring a Stolen Vehicle, and (3) Possession of Methamphetamine. *See* Doc. 130-3.  These offenses occurred on or about January 5, 2005.  Doc. 130-1 at 1.  A sentencing hearing was held on August 5, 2005.  *Id.*  On August 22, 2005, a Judgment and Order Deferring Sentence was entered, deferring the imposition of a sentence for eighteen months and placing Mr. Garcia on a three-year term of state supervised probation.  *Id.* at 2.  On September 8, 2005, a Certificate of Conviction was entered, certifying that the date of conviction was August 22, 2005.  Doc. 130-2.

Meanwhile, on August 23, 2005, Mr. Garcia was federally charged by indictment with one count of Felon in Possession of a Firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2).

1

Doc. 2.  The charge arose out of Mr. Garcia's alleged possession of a firearm on August 17, 2005.

*Id.*  He pled guilty to the indictment on May 30, 2006.  Docs. 16, 18.  He was sentenced to a 37-

month term of imprisonment, followed by three years of supervised release.  Doc. 26 at 2–3.  Mr.

Garcia's term of supervised release ultimately expired on July 14, 2017.  Doc. 127.

On June 19, 2020, Mr. Garcia filed the instant petition to challenge his federal conviction.

Doc. 130.  Mr. Garcia argues that his guilty plea was not voluntary and intelligent because the

magistrate judge that took his plea did not inform him of all of the elements of the charged offense.

*Id.* at 4.  Specifically, he argues that the magistrate judge failed to inform him that the government

must prove not only that he knew he possessed a firearm but that "he knew he belonged to the

relevant category of persons barred from possessing a firearm."  *Id.* at 6 (citing *Rehaif v. United

States*, 139 S. Ct. 2191, 2200 (2019)).  Mr. Garcia argues that he could not have known of his

prohibited status because he contends that he was not convicted of any state felonies until August

22, 2005—five days after his possession of a firearm on August 17, 2005.  *Id.* at 8.  He therefore

asks the Court to vacate his conviction and dismiss the Felon in Possession charge.  *Id.* at 11.  Mr.

Garcia also requests that the Court order the government to respond to his Petition.  *Id.*

The Court granted Mr. Garcia's second request and ordered the government to respond to

his petition.  Doc. 132.  The government responded on August 18, 2021, arguing that Mr. Garcia's

guilty plea on April 20, 2005 counts as a conviction under New Mexico law.  Doc. 133 at 8–11.

The government also argues that Mr. Garcia's claim is procedurally defaulted and that he did not

exercise due diligence in bringing the claim.  *Id.* at 12–17.  Finally, the government argues that

Mr. Garcia does not still suffer significant collateral consequences from the conviction and that he

has not endured a complete miscarriage of justice.  *Id.* at 17–20.  Thus, the government asks the

Court to deny Mr. Garcia's petition for a writ of *coram nobis*.  *Id.* at 20.

Mr. Garcia replied on September 14, 2021. Doc. 136. He reiterates that he was not convicted until August 22, 2005, and therefore argues that he is actually innocent of being a felon in possession of a firearm. *Id.* at 1–4. He also argues that he continues to be prejudiced by his federal conviction, because he could be impeached as a felon in future proceedings and because it could count towards his criminal history points under the federal Sentencing Guidelines. *Id.* at 5.

## STANDARD

"In federal courts the authority to grant a writ of *coram nobis* is conferred by the All Writs Act, which permits 'courts established by Act of Congress' to issue 'all writs necessary or appropriate in aid of their respective jurisdictions.'" *United States v. Denedo*, 556 U.S. 904, 911 (2009); *see also United States v. Morgan*, 346 U.S. 502, 507 (1954). "Generally speaking, courts will only issue the writ [of *coram nobis*] to correct errors of fact that, through no negligence on the part of the defendant, were not part of the original record and that would have prevented rendition of the judgment questioned." *United States v. Carpenter*, 24 F. App'x 899, 904 (10th Cir. 2001) (quotations omitted).

"Due to its exceptional nature, a petitioner must satisfy stringent criteria to obtain a writ of coram nobis." *Id.* at 905. First, a petitioner must demonstrate that the claim is not procedurally defaulted. *See, e.g.*, *United States v. Miles*, 923 F.3d 798, 804 (10th Cir. 2019) ("Absent those traditional grounds that have excused successive or abusive habeas petitions, a petition for writ of *coram nobis* must be rejected if the claim was raised or could have been raised on direct appeal, through a § 2255 motion, or in any other prior collateral attack on the conviction or sentence."); *see also Carpenter*, 24 F. App'x at 905 (A petitioner "must exhaust all otherwise available remedies, which includes seeking post-conviction relief under § 2255."). Second, a petitioner "must demonstrate that he exercised due diligence in raising the issue and that the information

3

used to challenge the sentence or conviction was not previously available to him." *Carpenter*, 24 F. App'x at 905; *see also Embrey v. United States*, 240 F. App'x 791, 794 (10th Cir. 2007). Third, "the writ is only available when other remedies and forms of relief are unavailable or inadequate." *Embrey*, 240 F. App'x at 794. Hence, the writ is usually only applied in cases where the petitioner "is no longer 'in custody' and therefore cannot seek habeas relief under 28 U.S.C. § 2255 or § 2241." *Chaidez v. United States*, 568 U.S. 342, 345 n.1 (2013). Finally, a petitioner "has the burden of asserting a jurisdictional or constitutional error resulting in a complete miscarriage of justice." *Embrey*, 240 F. App'x at 794 (quotations omitted). This is so because *coram nobis* relief is an "extraordinary remedy" available "only under circumstances compelling such action to achieve justice." *Morgan*, 346 U.S. at 511.

## DISCUSSION

Mr. Garcia is not eligible for a writ of *coram nobis* for three reasons. He has not made an adequate showing to overcome procedural default. He has not demonstrated that he exercised due diligence. Nor has he demonstrated that other remedies and forms of relief are unavailable or inadequate. Because Mr. Garcia is not eligible for a writ of *coram nobis*, the Court need not reach the issue of whether there was "a complete miscarriage of justice." *Embrey*, 240 F. App'x at 794.

### 1. Procedural Default

A plea of guilty is constitutionally valid only to the extent that it is "voluntary" and "intelligent." *Brady v. United States,* 397 U.S. 742, 748 (1970). The Supreme Court has "long held that a plea does not qualify as intelligent unless a criminal defendant first receives 'real notice of the true nature of the charge against him, the first and most universally recognized requirement of due process.'" *Bousley v. United States*, 523 U.S. 614, 618 (1998). Like the defendant in

*Bousley*, Mr. Garcia argues that his guilty plea "was not intelligent because the information provided him by the [] Court at his plea colloquy was erroneous." *Id.* at 622; Doc. 130 at 3.

"[T]he 'intelligence of a guilty plea can be attacked on collateral review only if first challenged on direct review.'" *United States v. Aguayo*, No. 21-1009, 2021 WL 4998920, at *2 (10th Cir. Oct. 28, 2021) (citing *Bousley*, 523 U.S. at 621). "Failure to raise a claim on direct appeal results in procedural default." *Id.* Mr. Garcia's claim that his guilty plea was unintelligent is the "type of claim [that] can be fully and completely addressed on direct review based on the record created at the plea colloquy." *Bousley*, 523 U.S. at 622. Because Mr. Garcia failed to raise this issue on direct appeal, the claim he raises in this petition is procedurally defaulted. *Id.*

Defendants can overcome procedural default and establish their eligibility for relief if they can demonstrate actual innocence.[1] *See Aguayo*, 2021 WL 4998920, at *2; *United States v. Hisey*, 12 F.4th 1231, 1235 (10th Cir. 2021). To establish actual innocence, defendants must demonstrate that, "in light of all the evidence, it is more likely than not that no reasonable juror would have convicted [them]." *Bousley*, 523 U.S. at 623 (quotations omitted).

As discussed *infra*, Mr. Garcia fails to demonstrate actual innocence; thus, he cannot overcome procedural default.

### a. Actual Innocence Based on Status

Mr. Garcia cannot establish actual innocence based on his status, because Mr. Garcia had already been convicted of a felony on the day that he was found to be in possession of a firearm.

To determine "[w]hat constitutes a conviction of [a felony]," the Court must look to "the law of the jurisdiction in which the proceedings were held." 18 U.S.C. § 921(a)(20); 18 U.S.C.

---

[1] A movant may also assert a cause-and-actual-prejudice theory, *see e.g.*, *Aguayo*, 2021 WL 4998920, at *2, but Mr. Garcia asserts no such theory.

§ 922(g).  Thus, the Court must not look to the paperwork surrounding Mr. Garcia's conviction [Docs. 130-1, 130-2], but must rely upon the date of conviction—as defined by New Mexico law—itself.

"New Mexico defines conviction as the finding of guilt, even before formal adjudication by the court, much less before sentencing." *State v. Mondragon*, 1988-NMCA-027, ¶¶ 16–19, 107 N.M. 421, 759 P.2d 1003 (N.M. Ct. App. 1988) (citing *In re Anderson*, 34 Cal. App. 2d 48, 50 (Cal. Ct. App. 1939)).  Indeed, the distinction between a conviction and a sentence could not be more stark: "The conviction is the finding of guilt.  [The] sentence is not an element of the conviction but rather a declaration of its consequences."  *State v. Larranaga*, 1967-NMSC-047, ¶ 9, 77 N.M. 528, 424 P.2d 804 (N.M. 1967).  A conviction, thus, "includes the establishing of guilt whether by accused's admission in open court by plea of guilty to the charges presented, or by a verdict or finding of a court or jury."  *Larranaga,* 1967-NMSC-047, ¶ 7.  In other words, a trial verdict or plea of guilty results in a "conviction."  *Id.*; *see also Mondragon*, 1988-NMCA-027, ¶¶ 16–19; *State v. Castillo*, 1987-NMCA-036, ¶ 7, 105 N.M. 623, 735 P.2d 540 (N.M. Ct. App. 1987).

This definition of "conviction" has remained unchanged, even as state law has evolved to lessen the impacts of criminal convictions through mechanisms like deferred sentences and conditional discharges.  For example, even though a deferred sentence "does not necessarily subject the defendant to criminal consequences," New Mexico law is clear that a deferred sentence involves an "adjudication of guilt" and is, therefore, a conviction.  *State v. Herbstman*, 1999-NMCA-014, ¶ 11, 126 N.M. 683, 974 P.2d 177, 180 (N.M. Ct. App. 1998).  Likewise, even though the conditional discharge statute allows courts to conditionally discharge a conviction, this statute does not upend the weight of a trial verdict or guilty plea.  *See* N.M. Stat. Ann § 31-20-13.  Rather,

"once a defendant successfully completes probation and charges are dismissed under a conditional discharge, the conviction whether by verdict or plea, no longer exists." *State v. Fairbanks*, 2004-NMCA-005, ¶ 8, 134 N.M. 783, 82 P.3d 954 (N.M. Ct. App. 2003).  In other words, a "conditional discharge results in the eradication of the . . . conviction." *Id.* ¶ 8.

Mr. Garcia argues that "it makes no sense that the defendant is considered a felon for the time between acceptance of the plea and sentencing." Doc. 136 at 2.  Admittedly, in certain limited circumstances, defendants are granted permission to withdraw their guilty pleas prior to sentencing.  *See, e.g.*, *State v. Pieri*, 2009-NMSC-019, ¶ 1, 146 N.M. 155, 207 P.3d 1132 (N.M. 2009).  Yet as with a conditional discharge, such an outcome does not negate the fact that a guilty plea is a conviction, but only serves to eradicate the conviction by operation of law if a court finds that a defendant may withdraw a guilty plea.  *See Fairbanks*, 2004-NMCA-005, ¶ 8.  New Mexico law is clear that defendants are convicted as soon as they enter a guilty plea.[2]  *Larranaga,* 1967-NMSC-047, ¶ 7.

Accordingly, pursuant to New Mexico law, Mr. Garcia was convicted of a felony on April 20, 2005, when he pled guilty in open court and his plea was accepted.  Doc. 130-1 at 1, 4; *see, e.g.*, *Mondragon*, 1988-NMCA-027, ¶¶ 16–19; *Larranaga,* 1967-NMSC-047, ¶ 7.  He therefore held a status identified by 18 U.S.C. § 922(g) and was prohibited from possessing a firearm under federal law when he possessed a firearm on August 17, 2005.  *See* 18 U.S.C. § 922(g)(1).  As such, Mr. Garcia's claim of actual innocence based on his status fails.

---

[2] For that matter, federal law is also clear that a guilty plea is a conviction.  *See, e.g.*, *Dickerson v. New Banner Inst., Inc.*, 460 U.S. 103, 112–13 (1983), *superseded by statute on other grounds as stated in Logan v. United States*, 552 U.S. 23, 27 (2007) ("A plea of guilty . . . is itself a conviction. Like a verdict of a jury it is conclusive.  More is not required; the court has nothing to do but give judgment and sentence.").

### b.  Actual Innocence Based on Knowledge of Status

Nor can Mr. Garcia establish actual innocence on the basis of his knowledge, because his briefing fails to address whether he knew that "he belonged to the relevant category of persons barred from possessing a firearm." *Rehaif*, 139 S. Ct. at 2200; Docs. 130, 136.

In *Rehaif*, the Supreme Court held that "in a prosecution under 18 U.S.C. § 922(g) and § 924(a)(2), the Government must prove both that the defendant knew he possessed a firearm and that he knew he belonged to the relevant category of persons barred from possessing a firearm." 139 S. Ct. at 2200.  This holding upended the previous "interpretation that ha[d] been adopted by every single Court of Appeals to address the question" that there was no knowledge requirement as to one's prohibited status.  *Id.* at 2201 (Alito, J., dissenting).  In the wake of *Rehaif*, the Tenth Circuit found that "the government need not prove that a defendant knew he was prohibited from possessing a firearm as a result of his status under § 922(g)."  *United States v. Benton*, 988 F.3d 1231, 1242–43 (10th Cir. 2021).  Rather, *Rehaif* only requires the government to prove that the defendant knew that he held a status identified by § 922(g) at the time he possessed a firearm.  *Id.* at 1243–45.

Mr. Garcia fails to directly assert that he did not know of his prohibited status on August 17, 2005.  Docs. 130, 136.  Rather, Mr. Garcia argues that he "could not have known of any prohibited status" on August 17, 2005, because he argues that he had not yet been convicted of a felony.  Doc. 130 at 8; *see also* Doc. 136 at 6 ("Mr. Garcia could not have known he was prohibited on August 17 of possessing any firearm.").  He even posits that, "given his probation did not seem to start until sometime in September, *he may have believed* he could have possessed his guns until he began actually serving his sentence."  Doc. 136 at 5 (emphasis added).

In hinging his argument on his erroneous understanding of his status, Mr. Garcia forfeits a powerful argument that he had no knowledge of his prohibited status.  As the Supreme Court explained in a post-*Rehaif* case: "If a person is a felon, he ordinarily knows he is a felon. Felony status is simply not the kind of thing that one forgets."  *Greer v. United States*, 141 S. Ct. 2090, 2097 (2021).  Yet as Mr. Garcia astutely observes, if "lawyers cannot agree when Mr. Garcia was convicted," it "defies logic" "to expect a laymen [sic] to understand the intricacies of law" on convictions.  Doc. 136 at 6.

It is even more improbable that Mr. Garcia knew of his prohibited status in light of a quirk of New Mexico law.  Namely, under New Mexico law, a sentence does not become final until the entry of a written judgment.[3]  *State v. Diaz*, 1983-NMSC-090, ¶¶ 2–6, 100 N.M. 524, 673 P.2d 501 (N.M. 1983), *cert. denied*, 469 U.S. 1016 (1984).  As discussed *supra*, a sentence is different than a conviction.  *See, e.g.*, *Larranaga,* 1967-NMSC-047, ¶ 7.  Yet the Court finds it improbable that a layperson would intuit this distinction.  Indeed, to a layperson, the imposition of a final sentence might more intuitively correspond with being deemed a felon, since the status alone implicates collateral consequences that are arguably punishments themselves.  Regardless, the Court finds it highly relevant that, under New Mexico law, a defendant has no "reasonable expectation of finality in an otherwise interlocutory sentence such as an oral sentence" unless "the defendant has begun serving the sentence."  *State v. Garcia*, 2022-NMCA-008, ¶ 21, 504 P.3d 567 (N.M. Ct. App. 2021), *cert. denied* (N.M. 2022).  In fact, if a final written judgment conflicts with a previous oral sentence in New Mexico, the written judgment controls—even to the detriment of

---

[3] Here, New Mexico law is exactly contrary to federal law.  *See, e.g.*, *United States v. Villano*, 816 F.2d 1448, 1450 (10th Cir. 1987) ("It is a firmly established and settled principle of federal criminal law that an orally pronounced sentence controls over a judgment and commitment order when the two conflict.").

defendants. *See, e.g.*, *State v. Knotts*, No. 32,305, 2013 WL 4516658, at *1–2 (N.M. Ct. App. Feb. 27, 2013) (affirming a written judgment imposing consecutive sentences despite a previous oral sentence imposing concurrent sentences); *State v. Enriquez*, No. 30,252, 2012 WL 1252654, at *11 (N.M. Ct. App. Mar. 8, 2012) (affirming a written judgment imposing a term of probation despite a previous oral sentence omitting any term of probation); *O'Brien & Assocs., Inc. v. Carl Kelley Const., Inc., Ltd.*, No. 32,080, 2012 WL 5839060, at *2 (N.M. Ct. App. Oct. 31, 2012) (affirming a written judgment awarding costs to the prevailing party despite a previous oral sentence that did not award any costs).

Here, where Mr. Garcia never served any time in custody, he had no "reasonable expectation of finality in . . . [the] oral sentence" he received on August 5, 2005. *Id.*; Doc. 130-1 at 1. As such, he could have argued forcefully that—regardless of his actual status—this inherent uncertainty led him to believe that he was *not* a convicted felon until the written judgement was entered on August 22, 2005. Doc. 130-1.

Unlike most *Rehaif* progeny, Mr. Garcia has a colorable chance of establishing his lack of knowledge.[4] Yet because he failed to directly address or establish his lack of knowledge of his prohibited status, the Court has no choice but to find that Mr. Garcia has failed to meet his burden

---

[4] In addition to the forfeited argument discussed *supra*, Mr. Garcia could have made several other arguments as to his lack of knowledge. For example, given that he received a deferred sentence, Mr. Garcia could have argued that he did not know that his state conviction was punishable by imprisonment for a term exceeding one year. *See, e.g.*, *United States v. Nelson*, No. 20-1340, 2021 WL 4995460, at *3 (10th Cir. Oct. 28, 2021) (observing that "the government may have had some difficulty proving Mr. Nelson knew his prohibited status" where "he was sentenced only to 60 days in jail and to probation, respectively, for his prior felonies"). Additionally, Mr. Garcia could have pointed out that, unlike most post-*Rehaif* movants, he had no other prior felony convictions and had not served more than a year on any charge. *See, e.g.*, *United States v. Daniels*, 804 F. App'x 944, 946 (10th Cir. 2020) (collecting cases rejecting *Rehaif* challenges where defendants had served terms of imprisonment exceeding one year). Nor was he facing a multi-count indictment that could have convinced him to plead guilty to the felon-in-possession charge to avoid the risk of going to trial on other counts. *See, e.g.*, *Aguayo*, 2021 WL 4998920, at *3.

10

to overcome procedural default by establishing his actual innocence.

### 2. Due Diligence

To be eligible for a writ of *coram nobis*, petitioners must show *both* that they have exercised due diligence and that their claim is not procedurally defaulted. *See, e.g.*, *Carpenter*, 24 F. App'x at 905. While conceptually similar, these showings are distinct. "To show due diligence in bringing a claim, a coram nobis petitioner must provide sound reasons explaining why a petitioner did not attack his or her sentences or convictions earlier." *United States v. Lujan*, No. CR 12-0268 JB, 2022 WL 326408, at *8 (D.N.M. Feb. 3, 2022). Although this is a lower bar than the procedural default standard discussed *supra*, Mr. Garcia nevertheless fails to demonstrate sound reasons to explain the timing of his petition.

Mr. Garcia argues that he exercised due diligence by filing the instant petition on June 19, 2020—364 days after the Supreme Court decided *Rehaif* on June 21, 2019. Doc. 130 at 9. On its face, this appears to be duly diligent. *C.f. United States v. Thody*, 460 F. App'x 776, 778 (10th Cir. 2012) (finding that waiting 15 years after a landmark Supreme Court decision to file a petition for *coram nobis* was not duly diligent).

However, as discussed *supra*, Mr. Garcia's petition centers on whether he was prohibited from possessing a firearm—not whether he knew that "he belonged to the relevant category of persons barred from possessing a firearm." *Rehaif*, 139 S. Ct. at 2200. This is not a *Rehaif* argument. *Id.* Moreover, Mr. Garcia could have made this argument before entering a guilty plea, on appeal, or through a habeas petition since the state criminal case was a matter of public record and a final judgment had been entered by the time he was federally charged. Docs. 2, 130-1.

By failing to squarely raise a *Rehaif* claim, Mr. Garcia fails to carry the burden to demonstrate his due diligence. *See Embrey*, 240 F. App'x at 794. Had Mr. Garcia argued that he

11

did not know about his prohibited status, he could have taken advantage of *Rehaif* on collateral review.  *See Lujan*, 2022 WL 326408, at *17 (citing *Baker v. United States*, 848 F. App'x 188, 189 (6th Cir. 2021) (concluding that *Rehaif* "announced a new rule")).  And given the timeline, the Court may have concluded that Mr. Garcia demonstrated his due diligence.  *See Thody*, 460 F. App'x at 778.  However, the Court cannot make such a finding here.

Although Mr. Garcia fails to demonstrate due diligence here, the Court makes this finding without prejudice.  Mr. Garcia hinged his petition on an erroneous understanding of his status and failed to make a *mens rea* argument in the alternative.  While this forecloses his current petition's success, it does not necessarily signify that Mr. Garcia should, in fact, have been convicted of being a felon in possession of a firearm in 2005.  Accordingly, should Mr. Garcia seek to challenge his federal conviction anew, the time that has elapsed between the lodging of his petition and the instant ruling should not count towards whether Mr. Garcia exercised due diligence.

### 3.  Unavailability & Inadequacy of Other Remedies

Parties agree that a petition for a writ of *coram nobis* is the appropriate avenue for relief because Mr. Garcia is no longer in federal custody and therefore cannot seek habeas relief under 28 U.S.C. § 2255 or § 2241.  *See Chaidez*, 568 U.S. at 345 n.1; Doc. 130 at 9; Doc. 133 at 3.  However, parties' agreement does not end the Court's inquiry.

In the instant case, Mr. Garcia cannot demonstrate that "other remedies and forms of relief are unavailable or inadequate," because the writ of *audita querela*, rather than the writ of *coram nobis*, is appropriate here.  *Embrey*, 240 F. App'x at 794.

> Writs of audita querela and coram nobis are similar, but not identical.  Usually, a writ of coram nobis is used to attack a judgment that was infirm at the time it issued, for reasons that later came to light.  By contrast, a writ of audita querela is used to challenge a judgment that was correct at the time rendered but which is rendered infirm by matters which arise after its rendition.

*United States v. Torres*, 282 F.3d 1241, 1245 n.6 (10th Cir. 2002) (citations and quotations omitted). Hence, "[g]enerally speaking, courts will only issue the writ [of *coram nobis*] to correct errors of fact that, through no negligence on the part of the defendant, were not part of the original record and that would have prevented rendition of the judgment questioned." *Carpenter*, 24 F. App'x at 904 (quotations omitted). Meanwhile, to merit *audita querela* relief, the Tenth Circuit has suggested that a "petitioner must show something like an intervening change in law." *Rawlins v. Kansas*, 714 F.3d 1189, 1193 (10th Cir. 2013).

Mr. Garcia's conviction raises a potential legal, rather than factual, error. As discussed *supra*, Mr. Garcia was convicted of a state felony prior to his possession of a firearm. Thus, there is no factual error implicated by his federal conviction for Felon in Possession of a Firearm. However, following *Rehaif*, there may be a legal error with his federal conviction—*if* Mr. Garcia can show that he did not know of his prohibited status at the time he possessed the firearm. This legal issue is precisely the type of issue that is ripe for a petition for a writ of *audita querela*. *See, e.g.*, *Rawlins*, 714 F.3d at 1193; *Torres*, 282 F.3d at 1245 n.6.

Arguably, a writ of *audita querela* is an inadequate remedy given the uncertainty of its availability in the criminal context. Federal Rule of Civil Procedure 60 formally abolished both *audita querela* and *coram nobis* in civil cases. *See* Fed. R. Civ. P. 60(e). "Although the Supreme Court has held that *coram nobis* is nonetheless available in the criminal context through the All Writs Act, there is no comparable Supreme Court holding with respect to *audita querela*." *United States v. Ballard*, 334 F. App'x 141, 143 (10th Cir. 2009) (citing *Morgan,* 346 U.S. at 507–10)). Nevertheless, several circuits, including the Tenth Circuit, have acknowledged that "a petition for a writ of *audita querela* might afford post-conviction relief to a criminal defendant to challenge a

13

conviction or sentence to the extent it fills gaps in the current system of post-conviction relief."

*United States v. Harris*, 391 F. App'x 740, 743 (10th Cir. 2010).

Here, the Court will assume, without deciding, that the writ of *audita querela* is an adequate

and available remedy.[5]  On this basis, and because there is no factual error alleged, the Court finds

that the writ of *audita querela*, rather than the writ of *coram nobis* is the adequate and appropriate

avenue for relief.  Thus, the Court cannot grant a writ of *coram nobis* on this ground.

## CONCLUSION

For the reasons stated above, Mr. Garcia's Petition for a Writ of *Coram Nobis* [Doc. 130]

is hereby **DENIED**.


ENTERED this 12th day of July 2022.

_____
MARTHA VAZQUEZ
SENIOR UNITED STATES DISTRICT JUDGE

---

[5] Although this issue is not squarely before the Court, this Court is persuaded that the writ of *audita querela* is still available in the criminal context.  *See, e.g.*, Cortney E. Lollar, *Invoking Criminal Equity's Roots*, 107 Va. L. Rev. 495, 527–33 (2021); Caleb J. Fountain, *Audita Querela and the Limits of Federal Nonretroactivity*, 70 N.Y.U. Ann. Surv. Am. L. 203 (2014).