IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

| | | |
|---|---|---|
| DAVID I. GARCIA, | § § | |
| Petitioner, | § § | |
| v. | § § | No.  CR 1:05-01858-001 MV |
| UNITED STATES OF AMERICA, | § § § | |
| Respondent. | § § | |

**Petition for a Writ of *Audita Querela***

1. Mr. Garcia respectfully submits this Petition for a Writ of *Audita Querela* under the All Writs Act, 28 U.S.C. § 1651(a). He challenges his conviction for being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2), obtained in USDC D.NM Case No. 05-CR-01858 MV. The sentencing court's address is 333 Lomas Blvd., NW, Albuquerque, New Mexico 87102. (Doc. 25).

2. Mr. Garcia pleaded guilty to this charge with a plea agreement on May 30, 2006. (Docs. 16, 18).

3. He was sentenced to a term of 37 months of incarceration followed by three years of supervised release. (Doc. 26 at 2–3)

4. Mr. Garcia did not appeal his conviction or sentence.

5. And he did not file a motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255.

6. Mr. Garcia's term of supervised release expired on July 14, 2017. (Doc. 127).

7. Two years after Mr. Garcia's supervised release term expired, the Supreme Court held that in the pair of statutes under which Mr. Garcia was convicted—Sections 922(g) and 924(a)(2)—the "word 'knowingly' applies both to the defendant's conduct *and to the defendant's status.*" *Rehaif v. United States*, 139 S. Ct. 2191, 2194 (2019) (emphasis added).

8. In other words, "[t]o convict a defendant [for a violation of Section 922(g)], the Government [] must show that the defendant knew that he possessed a firearm and *also that he knew he had the relevant status when he possessed it.*" *Id.* (emphasis added).

9. *Rehaif*'s holding abrogated Tenth Circuit law on Sections 922(g) and 924(a). That now-abrogated circuit law had required only "three elements [] to sustain a conviction under § 922(g)(1)[.]" The government had to prove "1) the defendant was convicted of a felony; 2) the defendant thereafter knowingly possessed a firearm; and 3) the possession was in or affecting interstate commerce." *United States v. Capps*, 77 F.3d 350, 352 (10th Cir. 1996). That was it.

10. Then-Judge, now Justice, Gorsuch recognized the constitutional and textual defects of the Tenth Circuit law that applied when Mr. Garcia was convicted: circuit law failed to apply the word knowingly to each element of the crime. *See United States v. Games-Perez*, 667 F.3d 1136, 1143 (10th Cir. 2012) (Gorsuch, J., concurring) ("*Capps*'s holding—that the government doesn't have to prove a defendant knew he was a felon—simply can't be squared with the text of the relevant statutes.")

11. *Rehaif* corrected the problem that then-Judge, now-Justice, Gorsuch identified. And in correctly applying Section 924(a)(2)'s "knowingly" requirement to every

element of Section 922(g), the Supreme Court abrogated existing Tenth Circuit law, rendering Mr. Garcia's conviction infirm.

12. Since *Rehaif*, the Tenth Circuit has held that under Section 924(a)(2)'s "scienter requirement," the government must prove that a defendant knew that they held a prohibited status under Section 922(g) to sustain a conviction under that statute. *United States v. Benton*, 988 F.3d 1231, 1242–43 (10th Cir. 2021).

13. This Petition for a Writ of *Audita Querela* is the appropriate vehicle "to challenge [Mr. Garcia's] judgment" because it "was correct at the time rendered but [it was] rendered infirm by matters which ar[ose] after its rendition." *U.S. v. Torres*, 282 F.3d 1241, n. 6. (10th Cir. 2002) (quoting *U.S. v. Reyes*, 945 F.2d 862, 863 n.1 (5th Cir. 1991)).[1]

14. Specifically, Mr. Garcia's judgment was "rendered infirm" by *Rehaif*. Again, in *Rehaif*, the Supreme Court held that, "[t]o convict a defendant, the Government [] must show that the defendant knew that he possessed a firearm and *also that he knew he had the relevant status when he possessed it*." *Id.* at 2194 (emphasis added). Because Mr. Garcia *did not know* that he had a felony status at the time he possessed the firearm—the relevant status required for his conviction—he is actually innocent.

15. For these and the following reasons, Mr. Garcia respectfully asks the Court to vacate his conviction and dismiss the charges.

---

[1] Mr. Garcia filed a Petition for a Writ of *Coram Nobis* on June 19, 2020. (Doc. 130). The Court denied that Petition on July 12, 2022. (Doc. 138). Mr. Garcia graciously thanks the Court for identifying the writ of *audita querela* as "an adequate and available remedy" and the correct method for challenging his conviction. (Doc. 138 at 12–14).

I.  **Facts**

16.  Mr. Garcia's conviction hinges on whether he knowingly engaged in prohibited conduct—possessing a firearm in or affecting interstate commerce—while *knowingly* having a prohibited status, being a felon.

   a.  **Mr. Garcia did not know that he had a felony status until August 22, 2005.**

17.  On April 20, 2005, Mr. Garcia pleaded guilty to fourth-degree state felony crimes in New Mexico state court. Mr. Garcia conditioned his plea on the state court giving him "a deferred or suspended sentence." (Doc. 130-3 at 1).

18.  Nearly four months later, on August 5, 2005, the Fourth Judicial District Court of New Mexico held a sentencing hearing in Mr. Garcia's state felony case.

19.  More than two weeks later, on August 22, 2005, the Fourth Judicial District Court of New Mexico entered its Judgment and Order Deferring Sentence in Mr. Garcia's state felony case. (Doc. 130-1).

20.  Until August 22, 2005, Mr. Garcia *did not know* he was a convicted felon.

21.  More than two weeks after that, on September 8, 2005, the District Court Clerk for the Fourth Judicial District entered Mr. Garcia's Certificate of Conviction, "certify[ing] that [Mr. Garcia] ha[d] been convicted of a felony by the District Court[.]" (Doc. 130-2).

### b. A federal grand jury indicted Mr. Garcia for violating Sections 922(g)(1) and 924(a)(2) *before* he knew that he had a felony status.

22. On August 23, 2005, a federal grand jury indicted Mr. Garcia on one count of being a felon in possession of a firearm. The indictment alleged that Mr. Garcia had violated 18 U.S.C. §§ 922(g)(1) and 924(a)(2). (Doc. 2).

23. The single count of the August 23, 2005, indictment charged:

> On or about the 17th day of August, 2005, in Bernalillo County, State and District of New Mexico, the defendant, **DAVID I. GARCIA**, having been convicted on or about April 20, 2005 in the Fourth Judicial District Court for the State of New Mexico of Receving [sic] Stolen Property over $250.00, Receiving/Transferring a Stolen Motor Vehicle and Possession of Methamphetamine in Cause No.CR- 2005-02, crimes punishable by imprisonment for a term exceeding one year, did possess in and affecting commerce a firearm, a Bryco model 38, .380 caliber semi-automatic pistol, serial number 1285230. In violation of 18 U.S.C. § 922(g)(1) and 18 U.S.C. § 924(a)(2).

(Doc. 2).

24. The federal charge arose from an allegation that Mr. Garcia possessed a firearm on August 17, 2005. That date was nearly one week *before* Mr. Garcia knew that he had a felony status. Until August 22, 2005—when the state court entered its Judgment and Order Deferring Sentence in Mr. Garcia's state felony case—he *did not know* that he had a felony status. (Doc. 130-1).

25. The parties settled the federal firearm possession case with a plea agreement on May 30, 2006. (Doc. 18).

26. That day, Mr. Garcia appeared before the magistrate judge to enter his guilty plea. (Doc. 16).

27. It does not appear from the change-of-plea hearing record that the magistrate judge informed Mr. Garcia that the government would have to prove that Mr. Garcia *knew* that he was a felon to convict him of the crime charged in the indictment. The magistrate judge's apparent failure to inform Mr. Garcia of this element of the crime was consistent with the now-abrogated Tenth Circuit law in *Capps*. Again, *Capps* wrongly interpreted the word "knowingly" in Sections 922(g) and 924(a)(2) as only applying to a defendant's conduct (possessing a firearm), not their prohibited status (being a felon). 77 F.3d at 352 (10th Cir. 1996).

28. The magistrate judge accepted Mr. Garcia's guilty plea and deferred acceptance of the plea agreement until sentencing. (Doc. 16).

29. The Court later sentenced Mr. Garcia to 37 months of incarceration followed by three years of supervised release. (Doc. 25).

30. Mr. Garcia's term of supervised release expired on July 14, 2017. (Doc. 127).

## II. Ground for Relief—Mr. Garcia's Conviction Must Be Set Aside Under *Rehaif v. United States*, 139 S. Ct. 2191 (2019).

a. **Mr. Garcia did not know that he had a felony status until August 22, 2005, when the state court entered its written judgment, making his felony sentence final.**

31. On August 17, 2005—the day when he allegedly possessed a firearm giving rise to the federal charge in this case—Mr. Garcia *did not know* that he had a felony status and that "he belonged to the relevant category of persons barred from possessing a firearm." *Rehaif*, 139 S. Ct. at 2200.

6

32. Mr. Garcia did not know he had a felony status until five days later—on August 22, 2005—when the state court entered its written judgment in his state felony case. (Doc. 130-1).

33. As the Supreme Court observed in a post-*Rehaif* opinion—and this Court echoed—"[i]f a person is a felon, he ordinarily knows he is a felon. Felony status is simply not the kind of thing that one forgets." *Greer v. United States*, 141 S. Ct. 2090, 2097 (2021) (internal citation and quotations omitted); (Doc. 138 at 9).

34. Until August 22, 2005, Mr. Garcia *did not know* he had a felony status because his felony sentence *was not final*. Under New Mexico state law, a sentence is not final until the state court enters a *written* judgment. *State v. Diaz*, 1983-NMSC-090, ¶¶ 2–6, 100 N.M. 524, 673 P.2d 501 (N.M. 1983), *cert. denied*, 469 U.S. 1016 (1984). As this Court observed, "[i]t is even more improbable that Mr. Garcia knew of his prohibited status in light of a quirk of New Mexico law. Namely, under New Mexico law, a sentence does not become final until the entry of a written judgment." (Doc. 138 at 9) (citing *Diaz*, 1983-NMSC-090, ¶¶ 2–6 (N.M. 1983)).

35. As this Court has recognized, defendants in New Mexico state cases do not have any "reasonable expectation of finality in an otherwise interlocutory sentence such as an oral sentence"—like the one Mr. Garcia received on August 5, 2005—unless "the defendant has begun serving the sentence." *State v. Garcia*, 2022-NMCA-008, ¶ 21, 504 P.3d 567 (N.M. Ct. App. 2021), *cert. denied* (N.M. 2022); (Doc 138 at 9). Because Mr. Garcia served no time in custody, he did not have a reasonable expectation of finality in his sentence until August 22, 2005, when the court entered its final written judgment.

36.     Moreover, until the state court entered its written judgment on August 22, 2005, it could have imposed a *different* sentence in Mr. Garcia's case, meaning he *did not know* he had a felony status until that date. In New Mexico, a final written judgment controls even if it conflicts with a prior oral sentence. *See, e.g., State v. Rushing,* 1985-NMCA-091, 103 N.M. 333, 706 P.2d 875 (N.M. Ct. App. 1985) (an oral sentence "is not a final judgment and is subject to change until reduced to writing" in a final judgment); (Doc. 138 at 9). Because Mr. Garcia had no reasonable expectation of the finality of his state felony sentence until August 22, 2005, he *did not know* he had a felony status on August 17, 2005, the date when the government alleged he was a felon in possession of a firearm.

      b. **Additionally, Mr. Garcia did not know he had a felony status on August 17, 2005, because he had no other prior felony conviction and had never served more than a year on any charge.**

37.     Unlike many people seeking post-conviction relief under *Rehaif*, Mr. Garcia had *no felony convictions* predating his felony conviction in the state case that gave rise to this federal case. And he had never been incarcerated for more than a year for *any* charge. For these additional reasons, he *did not know* that he had a felony status on August 17, 2005.

38.     In at least two unpublished decisions, Tenth Circuit panels have suggested that defendants who served multi-year sentences for prior felony convictions would have difficulty obtaining relief under *Rehaif*. Unlike Mr. Garcia, those defendants would have difficulty showing that they did not know they had a felony status. Having served multi-year terms of incarceration, they would likely know that they had "been convicted of

8

crimes with prison terms of a year or more." *United States v. Daniels*, 804 F. App'x 944, 946 (10th Cir. 2020) (unpublished); *see also United States v. Fisher*, 796 F. App'x 504, 510–11 (10th Cir. 2019) (unpublished) ("The PSR lists multiple felony convictions, including the 1989 felony conviction mentioned at Fisher's sentencing hearing. Everything considered, we conclude that Fisher has no meritorious argument that his factual basis insufficiently established that he knew of his felony status when he possessed the charged firearm.").

39.    But here, Mr. Garcia *did not know* that he had a felony status until August 22, 2005, when the state court entered its final judgment in his *first* felony case. Before then, he had never had a felony status. And he had never been incarcerated for more than a year for any charge.

    c.    **Moreover, Mr. Garcia did not know he had a felony status because the state court imposed a deferred sentence with no term of incarceration in his case.**

40.    Because the state court imposed a *deferred* sentence in Mr. Garcia's case, he did not know that his state conviction was punishable by imprisonment for a term exceeding one year. Deferred sentences are "an alternative to confinement." NMSA 1978, § 31-20-3 (1985). As the New Mexico Supreme Court noted, "[t]he Legislature intended to give courts the authority to defer sentencing if, in the court's opinion, the defendant could be rehabilitated without imposing punishment." *United States v. Reese*, 2014-NMSC-013, ¶ 29, 326 P.3d 454 (N.M. 2014). Courts "[t]ypically" "consider[]" deferred sentences "in cases where the court feels that it is more appropriate to allow the offender the opportunity to prove that *his lapse in judgment was a one-time mistake* and *not an error indicative of a more serious, underlying issue requiring incarceration*." *Id.* (emphasis

added). Mr. Garcia *did not know* that he was "convicted . . . of a crime punishable by imprisonment for a term exceeding one year" because his deferred sentence did not punish him with a term of incarceration. 18 U.S.C. § 922(g)(1).

41. A Tenth Circuit panel recently observed that even in a case where a person was "sentenced only to 60 days in jail and to probation, respectively, for his prior felonies[,]" "the government may have had some difficulty proving [the defendant] Mr. Nelson knew his prohibited status" under Section 922(g)(1). *United States v. Nelson*, No. 20-1340, 2021 WL 4995460, at *3 (10th Cir. Oct. 28, 2021) (unpublished); (Doc. 138 at 10, n. 4). Mr. Garcia's case is more clear-cut. Unlike the defendant in *Nelson*, Garcia did *not* receive or serve a term of incarceration in his underlying state case. He *did not know* he was convicted of a crime punishable by a term of imprisonment exceeding one year.

    d. **Finally, but for the *Rehaif* error, Mr. Garcia would have gone to trial.**

42. If the Supreme Court had decided *Rehaif before* Mr. Garcia entered into his plea agreement, he would have "insisted on going to trial." *See, e.g., United States v. Aguayo,* No. 21-1009, 2021 WL 4998920, at *2 (10th Cir. Oct. 28, 2021) (unpublished) (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)). Mr. Garcia faced only *one* count in his indictment—being a felon in possession of a firearm. In weighing the risks of going to trial on that single count against the punishment in his plea agreement, he decided to enter into a plea agreement based on then-controlling, now-abrogated circuit law. Then, controlling circuit law *did not* require the government to prove that Mr. Garcia *knew* he had a prohibited status under Section 922(g) at the time he possessed the firearm. *Capps*, 77 F.3d at 352 (10th Cir. 1996). Now it does. *Rehaif*, 139 S. Ct. at 2194. If *Rehaif*—an

10

"intervening change in the law"—had been decided before he entered his plea, Mr. Garcia *would have* gone to trial because he *did not know* that he had a felony status at the time he possessed a firearm. *See Rawlins v. Kansas,* 714 F.3d 1189, 1193–96 (10th Cir. 2013) (noting that "audita querela addresses unanticipated situations that arise after judgment" and "must be brought on 'legal' rather than 'equitable grounds'" with the "petitioner [] show[ing] something like an intervening change in the law").

43. Unlike other defendants, Mr. Garcia did not enter into a plea agreement to avoid the risk of facing multiple counts at trial. *See Aguayo,* 2021 WL 4998920, at *3 (10th Cir. Oct. 28, 2021) (a defendant weighing a plea agreement or a trial for a single felon-in-possession-of-a-firearm count has a different analysis than one facing that and other counts). He only faced one count—a single violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). To sustain a conviction for that single count, the government must prove that a defendant *knew* they had a prohibited status when they knowingly possessed a firearm. *Rehaif,* 139 S. Ct. at 2194. *Rehaif* clarifies that the government's burden in sustaining a conviction under Sections 922(g)(1) and 924(a)(2) is greater than it was under the now-abrogated circuit law that applied when Mr. Garcia entered his plea agreement. Under *Rehaif,* Mr. Garcia would have insisted on going to trial because he *did not know* he had a felony status on August 17, 2005.

### III. This Court has Jurisdiction to Grant Mr. Garcia the requested Writ of Audita Querela under 28 U.S.C. § 1651.

44. Under the All Writs Act, 28 U.S.C. § 1651, this Court has jurisdiction to grant Mr. Garcia the writ of *audita querela*. In denying Mr. Garcia's earlier Petition for a Writ of *Coram Nobis,* this Court found that "the writ of *audita querela,* rather than the writ of

*coram nobis* is the adequate and appropriate avenue for relief." (Doc. 138 at 14). Writs of *audita querela* are distinct from writs of *coram nobis*. As the Tenth Circuit and this Court have noted,

> [u]sually, a writ of coram nobis is used to attack a judgment that was infirm at the time it issued, for reasons that later came to light. By contrast, a writ of audita querela is used to *challenge a judgment that was correct at the time rendered but which is rendered infirm by matters which arise after its rendition*.

*Torres*, 282 F.3d at 1245 n. 6 (internal quotations omitted and emphasis added) (citing *United States v. Reyes*, 945 F.2d 862, 863 n. 1 (5th Cir. 1991)); (Doc. 138 at 12). Here, *Rehaif* abrogated Tenth Circuit law that applied at the time Mr. Garcia was convicted of his federal offense, rendering his conviction infirm and meriting a writ of *audita querela*.

45. This Court has assumed that the writ of *audita querela* is an available remedy. (Doc. 138 at 14). And the Tenth Circuit has "acknowledged . . . that a petition for a writ of audita querela might afford post-conviction relief to a criminal defendant to challenge a conviction or sentence to the extent it fills gaps in the current system of post-conviction relief." *United States v. Harris*, 391 F. App'x 740, 743 (10th Cir. 2010) (unpublished) (citing *Torres*, 282 F.3d at 1245 n. 6). Because there is no other post-conviction relief available for Mr. Garcia, the writ of audita querela fills a significant gap in addressing his now-infirm conviction.

### IV. The Collateral-Attack Waiver Does Not Apply.

46. Mr. Garcia's plea agreement does not waive his appellate rights or his right to collaterally attack his plea. (Doc. 18). *Rehaif* rendered Mr. Garcia's conviction invalid,

and the writ of *audita querela* is the correct avenue for Mr. Garcia to challenge his conviction. (Doc. 138 at 14).

V.  **Prayer for Relief**

*Rehaif* rendered Mr. Garcia's conviction infirm. He therefore respectfully asks the Court to:

    a. order the government to respond to this Petition;

    b. vacate his conviction and dismiss the charges; and

    c. grant him any other relief that is just and practicable.

Respectfully submitted,

FEDERAL PUBLIC DEFENDER
111 Lomas NW, Suite 501
Albuquerque, NM 87102
(505) 346-2489
(505) 346-2494 Fax
aric_elsenheimer@fd.org

 /s/ *filed electronically on 9/1/22*
ARIC G. ELSENHEIMER, AFPD