## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      Plaintiff,

v.                                   No. CR 05-1858-MV

DAVID GARCIA

      Defendant.

### MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court on David Garcia's Petition for Writ of *Audita Querela* [Doc. 139]. The government filed a Response [Doc. 145] and Mr. Garcia filed a Reply [Doc. 153]. Having considered the briefs and relevant law, and being otherwise fully informed, the Court finds that Mr. Garcia's motion is well-taken and will be granted.

### BACKGROUND

On April 20, 2005, Mr. Garcia pled guilty to the following fourth-degree felonies under New Mexico law: (1) Receiving Stolen Property (Receive) (Over $250), (2) Receiving/Transferring a Stolen Vehicle, and (3) Possession of Methamphetamine. *See* Doc. 130-3. These offenses occurred on or about January 5, 2005. Doc. 130-1 at 1. A sentencing hearing was held on August 5, 2005. *Id.* On August 22, 2005, a Judgment and Order Deferring Sentence was entered, deferring the imposition of a sentence for 18 months and placing Mr. Garcia on a three-year term of state supervised probation. *Id.* at 2. On September 8, 2005, a Certificate of Conviction was entered, certifying that the date of conviction was August 22, 2005. Doc. 130-2.

Meanwhile, on August 23, 2005, Mr. Garcia was federally charged by indictment with one count of Felon in Possession of a Firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2).

Doc. 2. The charge arose out of Mr. Garcia's alleged possession of a firearm on August 17, 2005. *Id.* He pled guilty to the indictment on May 30, 2006. Docs. 16, 18. He was sentenced to a 37-month term of imprisonment, followed by three years of supervised release. Doc. 26 at 2–3. Mr. Garcia's term of supervised release ultimately expired on July 14, 2017. Doc. 127.

On June 19, 2020, Mr. Garcia filed a Petition for a Writ of *Coram Nobis*, asking this Court to vacate his conviction because the magistrate judge who took his plea did not inform him of all the offense elements, in contravention of *Rehaif v. United States*, 139 S. Ct. 2191 (2019).[1] Doc. 130 at 4–6. Specifically, Mr. Garcia asserted that he could not have known of his prohibited status because he did not obtain that prohibited status until he was convicted of a felony on August 22, 2005—five days after his possession of a firearm (the conduct underlying the instant case) on August 17, 2005.  *Id.* at 8.

This Court ultimately denied Mr. Garcia's petition, finding that he was not eligible for a writ of *coram nobis* because he had (1) procedurally defaulted the claim, (2) failed to exercise due diligence, and (3) not demonstrated that other remedies and forms of relief were unavailable or inadequate. Doc. 138 at 4. The Court disagreed with Mr. Garcia's claim that he was not convicted of a felony until August 22, 2005, concluding that under New Mexico state law, he was formally convicted when he pled guilty to several felony offenses on April 20, 2005.  *Id.* However, in denying the petition, the Court assumed—without deciding—that the writ of *audita querela* was an available and appropriate remedy for Mr. Garcia if he raised a claim based on his *knowledge,* or lack thereof, of his felony status during the commission of the instant offense on August 17,

---

[1] In *Rehaif*, the Supreme Court held that a conviction under 18 U.S.C. § 922(g)(5) requires that the accused not only "knew he possessed the firearm" but also "knew he had the relevant status when he possessed it." 139 S. Ct. at 2194.

2005. *Id.* at 14. Mr. Garcia subsequently filed the instant Petition for a Writ of *Audita Querela* on September 1, 2022. His core claim is that he did not *know* he was a felon when he possessed a firearm on August 17, 2005. Doc. 139. He argues that if he had been properly advised of the government's burden of proof, he would not have pled guilty but instead would have proceeded to trial. *Id.* at 10. Accordingly, he asks the Court to vacate his conviction. Following an order from the Court, the government filed a Response in opposition on September 15, 2023 [Doc. 145] and Mr. Garcia filed a Reply on November 17, 2023 [Doc. 153].

## DISCUSSION

### I.      A Writ of *Audita Querela* is the Appropriate Remedy.

As stated above, in this Court's decision denying Mr. Garcia's petition for a writ of *coram nobis,* the Court assumed, without deciding, that the writ of *audita querela* was an available remedy. The Court now finds that the writ of *audita querela* is the appropriate remedy for Mr. Garcia.

Under the All Writs Act, district courts "may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a); *see also United States v. New York Tel. Co.*, 434 U.S. 159, 172 (1977) (noting that under the All Writs Act, a federal court may "issue such commands . . . as may be necessary or appropriate to effectuate and prevent the frustration of orders it has previously issued in its exercise of jurisdiction otherwise obtained."). Ancient common law writs "allow courts to reexamine judgments in certain limited circumstances." *Id.* at 1191. One such writ is the writ of *audita querela*, "which translated means 'the complaint having been heard.'" *Rawlins v. Kansas*, 714 F.3d 1189, 1192 (10th Cir. 2013) (citing BLACK'S LAW DICTIONARY 150 (9th ed. 2009)). Historically, courts granted writs of *audita querela* to release debtors for good cause (*e.g.*, when a debtor had

paid a debt, but the creditor nonetheless continued to press a claim). *Id.* at 1192–93 (citing William Blackstone, *Commentaries* \*406); *see also* Cortney E. Lollar, *Invoking Criminal Equity's Roots*, 107 VA. L. REV. 496, 527 (2021). However, as the Tenth Circuit has explained, the "writ was eventually extended to 'like cases' where post-judgment circumstances provided the defendant 'good matter to plead.'" *Rawlins*, 714 F.3d at 1192–93 (citing William Blackstone, *Commentaries* \*406). The "upshot" of this shift was that where "some unanticipated circumstance arising post-judgment made continuing enforcement of the judgment unfair," enforcing that judgment would be "contrary to justice." *Id.* (internal citation omitted).

Today, as the Tenth Circuit has explained, "a writ of audita querela is used to challenge 'a judgment that was correct at the time rendered but which is rendered infirm by matters which arise after its rendition.'" *United States v. Torres*, 282 F.3d 1241, 1245 n.6 (10th Cir. 2002) (quoting *United States v. Reyes,* 945 F.2d 862, 863 n.1 (5th Cir. 1991)); *see also United States v. Silva*, 423 F. App'x 809, 810 (10th Cir. 2011) ("This common law writ was available to a defendant who sought 'a rehearing of a matter on grounds of newly discovered evidence or newly existing legal defenses.'" (citing BLACK'S LAW DICTIONARY 141 (8th ed. 2004)). As the Tenth Circuit has extrapolated, "[a]n example would be something unanticipated, such as an intervening change in law." *Dickey v. Allbaugh*, 664 F. App'x 690, 694 (10th Cir. 2016) (citing *Rawlins*, 714 F.2d at 1193)). Importantly, ancient common law writs such as the writ of *audita querela* "are extraordinary remedies that are appropriate only in compelling circumstances." *United States v. Watkins*, 440 F. App'x 643, 645 (10th Cir. 2011).

There is some uncertainty about the availability of the writ of *audita querela* in the criminal context. Federal Rule of Civil Procedure 60 formally abolished both the writs of *audita querela* and *coram nobis* in civil cases. *See* Fed. R. Civ. P. 60(e).  And while "the Supreme Court has held

that *coram nobis* is nonetheless available in the criminal context through the All Writs Act, there is no comparable Supreme Court holding with respect to *audita querela*." *United States v. Ballard*, 334 F. App'x 141, 143 (10th Cir. 2009) (citing *United States v. Morgan,* 346 U.S. 502, 507–10)). Nevertheless, several circuits, including the Tenth Circuit, have acknowledged that "a petition for a writ of *audita querela* might afford post-conviction relief to a criminal defendant to challenge a conviction or sentence to the extent it fills gaps in the current system of post-conviction relief." *United States v. Harris*, 391 F. App'x 740, 743 (10th Cir. 2010); *see also United States v. Gabourel*, No. 22-6190, 2023 WL 2198793, at *2 n.3 (10th Cir. Feb. 24, 2023) ("When no relief is available under federal statute, we have left open whether a prisoner may attempt to seek relief from a final criminal conviction when new cause arises through a writ of *audita querela* pled under the All Writs Act."); *United States v. Nedelcu*, 519 F. App'x 980, 983 (10th Cir. 2013) ("We have similarly assumed, for the purposes of the single case before us, that the writ of audita querela is also still available."). Accordingly, "a writ of *audita querela* is not available to a petitioner when other remedies exist, such as a motion to vacate sentence under 28 U.S.C. § 2255." *Torres,* 282 F.3d at 1245 (citing *Tavares v. Mass,* 59 F. Supp. 2d 152, 155 (D. Mass. 1999)).

The Court first finds that, in line with Tenth Circuit precedent, the writ of *audita querela* is available to Mr. Garcia in order to "fill[] the gaps in the current system of post-conviction relief." *Harris,* 391 F. App'x at 743. No other remedies are available to Mr. Garcia on his claim. In contrast to other cases where courts have denied writs of *audita querela* because a § 2255 motion would have been the appropriate form of relief, § 2255 relief is not available to Mr. Garcia because he is not currently in custody. *See e.g., Torres*, 282 F.3d at 1245 (writ of *audita querela* not available where a petitioner could file a motion to vacate under § 2255); *United States v. Valdez-Pacheco,* 237 F.3d 1077, 1080 (9th Cir. 2000) (same). As established above, "federal courts may properly

fill the interstices of the federal postconviction remedial framework through remedies available at common law." *United States v. Ayala,* 894 F.2d 425, 428 (D.C. Cir. 1990). This includes filling the gaps created by "basic standing prerequisites such as the custodial requirement of §2255." Caleb J. Fountain, *Audita Querela and the Limits of Federal Non-Retroactivity,* 70 N.Y.U. Ann. Surv. Am. L. 203, 232 (2014). The Court further notes that because § 2255 does not "cover the entire field" of all post-judgment remedy, Mr. Garcia's writ is not barred simply because he is unable to raise a § 2255 claim. *Morgan,* 346 U.S. at 510–11. Importantly, there is no requirement that the person be in custody at the time of a petition for a writ of *audita querela*. *Dickey*, 664 F. App'x at 694.

Although the government argues that Mr. Garcia could have sought to appeal this Court's rejection of his *coram nobis* petition, such an appeal would have been futile. As the Court explained in its prior order, Doc. 138 at 12-13, Mr. Garcia did not, and could not, meet the standard for a writ of *coram nobis*, which "attacks a judgment that was infirm at the time it was rendered for reasons that later came to light." *Silva*, 423 F. App'x at 810 n.2 (citing *Torres*, 282 F.3d at 1245 n.6); *United States v. Lujan*, No. 22-2014, 2022 WL 17588500, at *3 (10th Cir. Dec. 13, 2022) (writ of *coram nobis* serves to correct factual and legal errors that existed at the time the judgment was entered). Mr. Garcia's core claim is not that a legal or factual error occurred at the time of his conviction. Rather, his core claim is that Mr. Garcia's conviction was a judgment that was "correct at the time it was rendered but which [has been] made infirm by matters that arose after its rendition." *Silva,* 423 F. App'x at 810 n.2. This is precisely the type of claim that *audita querela* is designed to address. *Id.* (*Audita querela* "is used to challenge a judgment that was correct at the time it was rendered but which is made infirm by matters that arose after its rendition") (citing *United States v. Miller,* 599 F.3d 484, 487 (5th Cir. 2010)); *see also* Lollar, *supra,* at 527

("Traditionally, *audita querela* was considered similar to *coram nobis*, except the writ of coram nobis attacks the judgment itself, whereas *audita querela* attacks the consequences or enforcement of the judgment."); *Rawlins,* 714 F.3d at 1193 (in order to prevail on a claim for *audita querela,* "the petitioner must show something like an intervening change in law"). Thus, a writ of *audita querela*, rather than writ of *coram nobis*, is the appropriate vehicle for the relief that Mr. Garcia seeks.

## II.     Audita Querela Relief is Warranted in Mr. Garcia's Case.

Ultimately, the Court finds that Mr. Garcia's case presents unique and compelling facts that warrant relief under a writ of *audita querela.* As a threshold matter, although the Court noted that Mr. Garcia procedurally defaulted his *coram nobis* claim, the government has raised no procedural default argument here, and the issue thus has been waived. *See Vanwinkle v. United States,* 645 F.3d 365, 370 (6th Cir. 2011) (citing *Gray v. Netherland,* 518 U.S. 152, 165–66 (1996)) ("Procedural default is an affirmative defense that the government must raise, or else it is forfeited."); *see also Seabrooks v. United States,* 32 F.4th 1375, 1384 (11th Cir. 2022) (noting that the government waived affirmative defense of procedural default because the government's response to defendant's petition "included only passing references to procedural default"). Indeed, it is unclear in the first instance whether procedural default applies to the writ of *audita querela.* There is no clear case law on the matter, and applying procedural default rules would undermine the very purpose of the writ, which is to provide "relief against a judgment or execution because of some defense or discharge arising *subsequent* to the rendition of the judgment." *United States v. Guerrero,* 415 F. App'x 858, 859 (10th Cir. 2011) (emphasis added). As there is no procedural default issue, the Court proceeds to the merits of Mr. Garcia's claim.

Because the writ of *audita querela* is seldom used, the requirements to prevail thereunder are unclear. *See United States v. Kenney*, No. 4:99-CR-0280, 2017 WL 621238, at *3 (M.D. Pa. Feb. 15, 2017) (noting that the writ "is so uncommonly granted that . . . courts disagree in attempting to define the circumstances that justify issuance of the writ"). The Tenth Circuit has provided few parameters, noting only that "common law writs, such as the writs of *coram nobis* and *audita querela*, are extraordinary remedies that are appropriate only in compelling circumstances." *Thornbrugh v. United States*, 424 F. App'x 756, 759 (10th Cir. 2011). Notably, the Tenth Circuit has not addressed what constitutes "compelling circumstances" for purposes of a writ of *audita querela.* In *Harris,* the Tenth Circuit suggested in dicta that, in the context of claims of actual innocence, a petitioner would need to show a "complete miscarriage of justice" in order for a court to grant *any* writ pursuant to the All Writs Act. 391 F. App'x at 744. In invoking the "complete miscarriage of justice standard," the Tenth Circuit cited to *Jimenez v. Trominski,* 91 F.3d 767, 768 (5th Cir. 1996). *Id.* A closer look at *Jimenez*, however, reveals that the Fifth Circuit held that this standard applies to petitions brought under a writ of *coram nobis*, explicitly differentiating *coram nobis* from *audita querela.* While the *Jimenez* court went on to explain that the writ of *audita querela* "permits a petitioner to obtain relief against a judgment based on some legal defense arising after the judgment," the court did not discuss the standard applicable to a request for relief thereunder. 91 F.3d at 768. Thus reading *Harris* and *Jimenez* together, this Court cannot conclude that the Tenth Circuit would apply the "complete miscarriage of justice" standard to a request for relief under *audita querela.*

Instead, the Court finds it more instructive and persuasive to look to courts that have recently granted writs of *audita querela* and have made individualized determinations of what constitutes sufficiently "compelling circumstances." For instance, in *Kenney,* the district court

granted the writ where the defendant had been convicted of possession by an inmate of a prohibited object, in violation of 18 U.S.C. § 1791(a)(2). 2017 WL 621238, at *1. The sentencing court determined that the conviction was a crime of violence, which rendered the defendant a career offender under the Sentencing Guidelines. *Id.* However, following the Supreme Court's decision in *Begay v. United States,* 553 U.S. 137 (2008), possession of a prohibited object designed to be used as a weapon was no longer a crime of violence for purposes of the Career Offender Guidelines. *Id.* The defendant in *Kenney* filed successive habeas petitions under § 2255, both of which were denied, and subsequently filed a writ of *audita querela*. The district court, finding that the defendant was no longer a career offender, granted the writ and resentenced the defendant. *Id.* The Court found that the circumstances were sufficiently compelling simply because the defendant fulfilled the three requirements of *audita querela*: he raised "a (1) valid legal objection; (2) to a judgment that arises after that judgment is entered; [](3) that [was not] redressable by some other means." *Id.* at *4.

In *Kessack v. United States*, No. C05-1828Z, 2008 WL 189679, *4 (W.D. Wash. 2008), the defendant had been sentenced when the Federal Sentencing Guidelines were mandatory to 30 years in prison, the mid-range of the guideline range of 324–405 months. Following the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220 (2005), which established that the Guidelines were advisory, rather than mandatory, the defendant filed a petition for a writ of *audita querela.* The court found that the requirements enumerated in *Kenney* were met, explaining that there had been an unanticipated, intervening change in law caused by "the series of cases culminating in the United States Supreme Court's landmark decision in *[Booker]*," that this change in the law rendered the defendant's judgment legally invalid, and that, because of the rules of retroactivity and limitations on successive habeas challenges, the defendant's only avenue to

request reconsideration of his sentence was through the writ of *audita querela*. *Id.* at \*2, \*4. The court then went on to consider whether there were circumstances that distinguished the defendant's case from those of others similarly impacted by the fact that the guidelines were mandatory at the time of judgment, and determined that the defendant had been "uniquely impacted by the Guideline calculations," as his sentence was 20 years greater than any of his co-defendants. *Id.* at \* 5.

The Court finds *Kenney and Kessack* persuasive, and thus applies their reasoning here. Specifically, the Court considers whether Mr. Garcia "raises a (1) valid legal objection; (2) to a judgment that ar[ose] after that judgment [was] entered; and (3) that is not redressable by some other means." *Kenney*, 2017 WL 621238, at \*4. The Court next considers whether there are circumstances that distinguish Mr. Garcia's case from those of others similarly impacted by the law that controlled at the time of judgment. *Kessack*, 2008 WL 189679. The Court finds that Mr. Garcia has satisfied his burden as to both inquiries.

First, Mr. Garcia convincingly argues that, since it was entered, his judgment has been rendered infirm by an intervening change in law, as articulated by the Supreme Court in *Rehaif*, and that he has no redress other than via the writ of *audita querela*. Specifically, in 2005, Mr. Garcia was convicted under § 922(g). Thereafter, in 2019, the Supreme Court held in *Rehaif* that "in a prosecution under § 922(g) and § 924(a)(2), the government must prove both that the defendant knew he possessed a firearm and that he knew he belonged to the relevant category of persons barred from possessing a firearm." 588 U.S. at 237. This holding upended the previous "interpretation that ha[d] been adopted by every single Court of Appeals to address the question" that there was no knowledge requirement as to one's prohibited status. *Id.* at 2201 (Alito, J., dissenting). Thus, after *Rehaif*, as interpreted by the Tenth Circuit, in order to obtain a conviction under § 922(g), the government must prove that the defendant knew that he held a status identified

by § 922(g) at the time he possessed a firearm. *United States v. Benton*, 988 F.3d 1231, 1243-45 (10th Cir. 2021). Invoking *Rehaif,* Mr. Garcia asserts that he did not know that he had the relevant status under §922(g) (the status of being a felon) when he possessed the firearm, and for this reason, argues that his judgment is infirm. Doc. 139 at 3.

The government disagrees, arguing that this claim is not credible, and indeed impossible, as Mr. Garcia had pled guilty to three state felonies on April 20, 2005, prior to illegally possessing a gun on August 17, 2005. Doc. 145 at 7. However, as this Court noted in its prior order denying Mr. Garcia's petition for a writ of *coram nobis,* the landscape of New Mexico law as it relates to the finality of convictions makes Mr. Garcia's claim not only plausible, but also highly convincing.

As detailed above, on April 20, 2005, Mr. Garcia pled guilty to three fourth-degree felonies under New Mexico law.  *See* Doc. 130-3. These offenses occurred on or about January 5, 2005. Doc. 130-1 at 1. A sentencing hearing was held on August 5, 2005. *Id.* On August 22, 2005, a Judgment and Order Deferring Sentence was entered, deferring the imposition of a sentence for 18 months and placing Mr. Garcia on a three-year term of state supervised probation. *Id.* at 2. On September 8, 2005, a Certificate of Conviction was entered, certifying that the date of conviction was August 22, 2005. Doc. 130-2. Mr. Garcia illegally possessed a firearm on August 17, 2005, leading to his conviction in the instant case under § 992(g).

As the Court noted in its denial of the writ of *coram nobis,* Mr. Garcia's claim of innocence with respect to his objective status as a felon fails as a matter of New Mexico state law, which states that a defendant is "convicted" when he enters a plea of guilty. *State v. Larranaga*, 424 P.2d 804 (N.M. 1967). However, when it comes to proving *knowledge* of the relevant legal status, it is highly likely that a lay person without much experience in the legal system, such as Mr. Garcia, would have relied on either the imposition of a final sentence or the documentation in their case to

determine when their conviction was final. Indeed, to a layperson, the imposition of a final sentence might more intuitively correspond with being deemed a felon rather than the entry of a guilty plea, since this would appear to be the trigger point for the imposition of the relevant conditions and collateral consequences that accompany a felony status. Admittedly, Mr. Garcia's sentencing hearing occurred on August 5, 2005, and he subsequently possessed a firearm on August 17, 2005. However, the written judgment was entered on August 22, 2005, *after* his possession of a firearm. Because the imposition of a final sentence more intuitively corresponds to the commencement of felony status, the Court finds it particularly relevant that, under New Mexico law, a defendant has no "reasonable expectation of finality in an otherwise interlocutory sentence such as an oral sentence" unless "the defendant has begun serving the sentence." *State v. Garcia*, 504 P.3d 567 (N.M. Ct. App. 2021), *cert. denied* (N.M. 2022). In fact, if a final written judgment conflicts with a previous oral sentence in New Mexico, the *written judgment* controls— even to the detriment of defendants. *See, e.g.*, *State v. Knotts*, No. 32,305, 2013 WL 4516658, at *1–2 (N.M. Ct. App. Feb. 27, 2013) (affirming a written judgment imposing consecutive sentences despite a previous oral sentence imposing concurrent sentences); *State v. Enriquez*, No. 30,252, 2012 WL 1252654, at *11 (N.M. Ct. App. Mar. 8, 2012) (affirming a written judgment imposing a term of probation despite a previous oral sentence omitting any term of probation); *O'Brien & Assocs., Inc. v. Carl Kelley Const., Inc., Ltd.*, No. 32,080, 2012 WL 5839060, at *2 (N.M. Ct. App. Oct. 31, 2012) (affirming a written judgment awarding costs to the prevailing party despite a previous oral sentence that did not award any costs). Here, where Mr. Garcia never served any time in custody and in fact was orally given a deferred sentence, he had no "reasonable expectation of finality in . . . [the] oral sentence" he received on August 5, 2005, and as a result had little reason to believe that he was in fact a felon at that point in time. *Id.*; Doc. 130-1 at 1. Instead, under New

Mexico state law, Mr. Garcia reasonably would have relied on the written judgment entered on August 22, 2005. Accordingly, his claim that he did not know that he was a felon on August 17, 2005, is not only plausible, but also consistent with New Mexico state law.

Furthermore, it does not require a great stretch of the imagination to conclude that Mr. Garcia may not have realized that his conviction was final when his plea agreement was entered on April 20, 2005, or even after his sentencing hearing occurred on August 5, 2005, when the actual documentation in his case, namely the certification of conviction, lists the date of conviction as August 22, 2005. Doc. 130–2. While lawyers and judges may understand the intricacies of state law that render the "certification of conviction" arguably meaningless, a layperson receiving a legal document that states they were convicted on August 22, 2005 would have no reason not to believe that they were in fact convicted on that date.

While the government argues that any mistake of law on Mr. Garcia's part is insufficient to establish a claim, mistake of law is precisely the type of defense that has arisen after the Supreme Court's decision in *Rehaif*. If the government is required to prove that a defendant has knowledge of a *legal status* that prohibits him from owning or possessing a firearm, then a mistake about the law conferring such status is a valid defense—and one that has clearly arisen *after* Mr. Garcia's conviction. *See Rawlins,* 714 F.3d at 1193 (finding that the writ of *audita querela* is reserved for unanticipated circumstances arising after entry of judgment that render continued enforcement of the judgment contrary to justice). Accordingly, Mr. Garcia has raised a valid legal objection to his judgment (namely, that it was rendered without the government establishing the *mens rea* required by *Rehaif*) that arose after that judgment was entered and, as explained above, has established that there is no avenue of redress available other than a writ of *audita querela*.

Next, Mr. Garcia has successfully established that the circumstances here are compelling and distinguish his case from the many others where defendants have challenged their convictions post-*Rehaif.* Many *Rehaif* challenges have been denied because "[i]f a person is a felon, he *ordinarily* knows he is a felon. Felony status is simply not the kind of thing that one forgets." *Greer v. United States*, 141 S. Ct. 2090, 2097 (2021). However, the complications of New Mexico state law, and the fact that the underlying documentation shows that his conviction was certified *after* he possessed the firearm, undermine this proposition. Simply put, this is one of the *extraordinary* cases contemplated by the Supreme Court's own reasoning where a person may not know at what point in time he is considered a felon.

Further, unlike in other unsuccessful *Rehaif* challenges, the record before the Court provides little evidence, other than the plea agreement entered on April 20, 2005 (prior to the *final* judgment filed on August 22, 2005), that Mr. Garcia knew he was a felon on August 17, 2005 when he possessed a firearm. For instance, Mr. Garcia did not have significant experience with the justice system and had not previously served a term of imprisonment exceeding one year. *Compare United States v. Daniela,* 804 F. App'x 944, 946 (10th Cir. 2020) (collecting cases rejecting *Rehaif* challenges where defendants had previously served terms of imprisonment exceeding one year, thus implying knowledge of felony status). There are also no factual allegations about the underlying incident that would indicate that Mr. Garcia knew he was a felon when he possessed the firearm. *Cf. United States v. Nelson,* No. 20-CR-1340, 2021 WL 4995460, at *4 (10th Cir. Oct. 28, 2021) (noting that the defendant likely knew he was a felon when he possessed a firearm because when the police approached him, he fled on foot, drew the gun from his waist, and threw it away from him); *United States v. Brandon,* 965 F.3d 427, 433 (5th Cir. 2020) (defendant's admission that he handed the firearm to a passenger for concealment when police approached

shows awareness of his prohibited status); *United States v. Innocent,* 977 F.3d 1077, 1083 (11th Cir. 2020) (noting that the defendant behaved in a way that suggested he knew he was not allowed to possess a firearm because he dropped the gun into someone else's car when he saw police approaching).

This case is also different from those where *Rehaif* challenges were denied based on the court's finding of a lack of prejudice. For instance, in *United States v. Aguayo*, No. 21-1009, 2021 WL 4998920, at *3 (10th Cir. Oct. 28, 2021), the defendant pled guilty to a § 922(g) charge but argued that his plea was not constitutionally valid because the district court did not advise him of the government's burden of proof with respect to his knowledge of his status as a felon. *Id.* at *2. The court found that the defendant could not show that he was prejudiced by the district court's failure to advise him of the government's burden because he could not demonstrate "a reasonable probability that, but for [the error], he would not have pleaded guilty and would have insisted on going to trial." *Id.* (quoting *Hill v. Lockhart,* 474 U.S. 52, 59 (1985)) (internal quotations omitted). In support of its finding, the court noted that the defendant was facing a charge under 18 U.S.C. § 924(c) in addition to the § 922(g) charge and that because "the government had substantial evidence that he possessed two pounds of methamphetamine and a loaded firearm," the defendant likely would have been convicted on a trafficking and § 924(c) charge if he had gone to trial. *Id.* Considering the evidence against him on the § 924(c) charge, the court found that the defendant likely would have pled guilty even if he had been aware of the government's burden to prove his *mens rea* as to the § 922(g) charge, and that the defendant thus was not prejudiced by the district court's failure to advise him thereof. *Id.*

In contrast, there is no evidence on the record that Mr. Garcia likely would have pled guilty even if he knew that the government had to prove the *mens rea* element of § 922(g). Mr. Garcia

was charged *solely* with a § 922(g) charge, and the unique circumstances of the timing of his convictions would have provided a strong defense at trial. Thus, the converse is true here: it is *highly likely* that he would have gone to trial if he had been properly advised of the government's burden to prove the *mens rea* element of the § 922(g) charge.

An unintuitive feature of the finality of New Mexico judgments, Mr. Garcia's lack of experience with the criminal legal system, and the high probability that he would have gone to trial had he known the government had to prove knowledge of a prohibited status, all contribute to a unique factual pattern that distinguishes Mr. Garcia's case from the many unsuccessful *Rehaif* challenges. As a result, the Court finds that Mr. Garcia's case presents the extraordinary and compelling circumstances required to prevail on an *audita querela* claim.

Because Mr. Garcia has successfully demonstrated that his judgment has been rendered legally invalid by an unanticipated, intervening change of law and that no other form of redress is available to him, and because the circumstances here are sufficiently compelling to warrant relief, the Court will grant a writ of *audita querela* and vacate his conviction.

### III.     The Deficiencies in the Federal Post-Conviction Relief System Require Courts to Turn to Special Remedies Such As the Writ of *Audita Querela*.

The Court writes separately here to underscore the need for remedies under writs such as *coram nobis* and *audita querela*. Congressional and judicial actions have rendered the federal post-conviction relief system inaccessible to most prisoners, many of whom have languished under unfair, and at times wrongful, convictions. As noted by the late Judge Stephen R. Reinhardt of the Ninth Circuit Court of Appeals, following the Supreme Court's slow curtailing of the writ of habeas corpus and the limitations on post-conviction relief created by the Anti-Terrorism and

Effective Death Penalty Act ("AEDPA"), the current federal habeas regime "resembles a twisted labyrinth of deliberately crafted legal obstacles" that make it extremely difficult if not impossible for most habeas petitioners to bring a successful claim. Stephen R. Reinhardt, *The Demise of Habeas Corpus and the Rise of Qualified Immunity: The Court's Ever-Increasing Limitations on the Development and Enforcement of Constitutional Rights and Some Particularly Unfortunate Consequences,* 113 Mich. L. Rev. 1219, 1220 (2015). The current post-conviction system constitutes a "maze of procedure" that is difficult even "for the most competent of lawyers to navigate." *Id.* at 1220 n. 4. The significant barriers to entry that habeas petitioners face is of great concern, given the reality that "the modern American criminal justice system all too often does not produce fair and just outcomes." *Id.* at 1220. Instead of turning a blind eye, courts should not shy away from looking to writs, rooted both in our ancient common law and in principles of fairness, to address complaints that either are not redressable or are otherwise limited by the current system of post-conviction relief. In other words, judges should act without the "fear of too much justice" that often underlies the policies and laws that curtail the rights of defendants and prisoners in the name of other values, such as finality or judicial efficiency. *See McCleskey v. Kemp,* 481 U.S. 279, 310 (1987) (J. Brennan, dissenting).

The instant case presents a situation where a defendant's right to trial and right to defend himself, affirmed by an intervening change in law, may be lost in the fray of our existing habeas rules. Accordingly, the Court finds it appropriate to grant relief under the writ of *audita querela* and vacate Mr. Garcia's conviction.

## CONCLUSION

Mr. Garcia's case presents precisely the type of situation contemplated by the writ of *audita querela,* namely a conviction that has been rendered legally invalid by an intervening change in

17

law for which there is no other form of redress and where the circumstances are compelling enough to warrant relief. Accordingly, the Court will vacate Mr. Garcia's conviction.

**IT IS THEREFORE ORDERED** that Mr. Garcia's Petition for a Writ of Audita Querela [Doc. 139] is granted and Mr. Garcia's conviction in case number 05-CR-1858 is vacated.

ENTERED this 15th day of July 2024.

_____
MARTHA VÁZQUEZ
SENIOR UNITED STATES DISTRICT JUDGE